**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

STEVEN STAFFORD,                    )
                                    )
            Petitioner,             )
                                    )
      v.                            )         No. 4:18-CV-1861 RLW
                                    )
DAVID VANDERGRIFF,[1]               )
                                    )
            Respondent.             )

<u>**MEMORANDUM AND ORDER**</u>

This matter is before the Court on Petitioner Steven Stafford's pro se Petition Under 28

U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody.  (ECF No. 1.)  Petitioner

is incarcerated at the Eastern Reception, Diagnostic and Correctional Center ("ERDCC").  For the

following reasons, the Court will deny the Petition.

**Procedural History**

On February 27, 2013, Petitioner Steven Stafford was convicted of murder in the first

degree, two counts of armed criminal action, and the class A felony of assault in the first degree,

by a jury in the Circuit Court of the City of St. Louis.  <u>State v. Stafford</u>, No. 1122-CR01324-01

(22nd Jud. Cir., State of Mo.).  On April 12, 2013, the trial court sentenced Petitioner to concurrent

terms of life in prison without probation or parole on the first-degree murder count, and concurrent

terms of life imprisonment on the other counts.

---

[1]David Vandergriff is the current Warden of the Eastern Reception, Diagnostic and Correctional
Center where Petitioner is incarcerated.  Under Rule 2(a) of the Rules Governing Section 2254 Cases in the
United States District Courts, "the petition must name as respondent the state officer who has custody."
Therefore, David Vandergriff's name will be substituted as the named Respondent in this action pursuant
to Rule 25(d), Fed. R. Civ. P.

Petitioner appealed his conviction and sentence to the Missouri Court of Appeals. State v. Stafford, No. ED99866 (Mo. Ct. App. 2014). The Court of Appeals affirmed the conviction and sentence on August 19, 2014. Petitioner sought reconsideration of the decision in the Court of Appeals, but his motion for reconsideration was denied on September 22, 2014. Petitioner's motion for transfer to the Missouri Supreme Court was denied on November 25, 2014. State v. Stafford, No. SC94498 (Mo. S. Ct. 2014). The Missouri Court of Appeals' mandate was issued on December 2, 2014. State v. Stafford, No. ED99866 (Mo. Ct. App. 2014).

Petitioner filed a motion for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15 on January 5, 2015, which the motion court denied on October 22, 2015. Stafford v. State, No. 1522-CC00050 (22nd Jud. Cir., State of Mo.). Petitioner filed an appeal on December 3, 2015, and the Missouri Court of Appeals reversed and remanded on February 21, 2017, for findings as to timeliness and the potential issue of abandonment of post-conviction counsel. Stafford v. State, No. ED103721, 510 S.W.3d 906 (Mo. Ct. App. 2017) (per curiam) (unpublished mem.). The mandate was issued on March 29, 2017.

The post-conviction motion court conducted a hearing on the issues of timeliness and abandonment of post-conviction counsel on June 9, 2017. Stafford v. State, No. 1522-CC00050-01 (22nd Jud. Cir., State of Mo.). The motion court found that the post-conviction motion was timely and Petitioner was not abandoned by post-conviction counsel, and once again denied petitioner's motion for post-conviction relief. Id. Petitioner appealed the denial to the Missouri Court of Appeals on July 6, 2017, and the Court of Appeals affirmed the denial of post-conviction relief on June 12, 2018. Stafford v. State, No.105768, 528 S.W.3d 926 (Mo. Ct. App. 2018) (per curiam) (unpublished mem.). The mandate was issued on July 6, 2018.

Petitioner filed his application for writ of habeas corpus pursuant to 28 U.S.C. § 2254 by placing his Petition in the prison mailing system at ERDCC on October 25, 2018.

### Grounds Raised

Petitioner filed the instant Petition for habeas relief in federal court on October 29, 2018 (ECF No. 1).  The Petition alleges three grounds for relief:

(1) The trial court erred in failing to acquit Petitioner on the first-degree murder charge because there was no evidence Petitioner deliberately and knowingly shot and killed the victim, J.M.

(2) The trial court committed plain error in giving Instruction No. 5, the verdict director on the first-degree murder charge in Count I, because it improperly referenced Instruction No. 11, Petitioner's self-defense instruction relating to the assault charge of a different victim, J.S., in count III.

(3) Trial counsel was ineffective for failing to use a peremptory challenge to strike juror number 697.

Respondent filed a Response in opposition to the Petition together with exhibits on April 16, 2019. (ECF No. 14.)

On August 5, 2020, Petitioner filed an Amended Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (ECF No. 43) that raises the following new grounds of ineffective assistance of counsel:

(1) Trial counsel was ineffective for not investigating the allegation that the state's key witness against Petitioner, J.S., was not sentenced in a federal court proceeding until after he testified at Petitioner's trial and received a deal in return for his testimony against Petitioner;

(2) Direct appeal counsel was ineffective for failing to investigate why the state's key witness J.S. received a low sentence in federal court, as Petitioner had instructed her to do; for failing to include an argument on Petitioner's direct appeal that the state's key witness received a deal in a federal court proceeding in return for his testimony against Petitioner; and for failing to obtain J.S.'s sealed federal court records;

(3) Post-conviction counsel was ineffective for failing to "pursue [J.S.'s] lenient federal sentence" and to obtain J.S.'s sealed federal court records as Petitioner asked her to.

(ECF No. 43 at 5, 15-16).

On September 9, 2020, petitioner filed a motion to stay and abey this action (ECF No. 44) pursuant to Rhines v. Weber, 544 U.S. 269 (2005), in order to return to state court and exhaust the claims raised in his Amended Petition.  Respondent opposed the motion to stay and abey.  (ECF No. 46.)  The Court concluded that all of Petitioner's claims in the Amended Petition must be deemed exhausted and therefore it was not subject to stay and abeyance under Rhines.  See Mem. and Order of Sept. 14, 2021 (ECF No. 50 at 4-7) (denying Petitioner's motion to stay and abey).

A district court may dismiss a habeas petitioner's motion without an evidentiary hearing if "(1) the movant's allegations, accepted as true, would not entitle the movant to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." Buster v. United States, 447 F.3d 1130, 1132 (8th Cir. 2006) (internal quotation marks omitted) (quoting Sanders v. United States, 341 F.3d 720, 722 (8th Cir. 2003)).  Because the Court determines that Petitioner's claims do not warrant habeas relief on their face, it will deny the Petition without an evidentiary hearing.

### Factual Background

The Missouri Court of Appeals described the facts of Petitioner's criminal case on direct appeal as follows:

> [T]he State adduced the eyewitness testimony of J.S. that on the night of February 23, 2011, he was present in J.M.'s house when he witnessed Defendant shoot the victim, J.M., in the head, as she lay on a couch.  J.S. testified that J.M. was a drug user, and various people would come to her house to use drugs.  He testified that on the night of February 23, 2011, he stopped by J.M.'s house to check on her at about 1:00 a.m. Defendant, along with two other men, arrived at the house a short time later.  J.S. overheard a brief conversation between Defendant and J.M., in which J.M. apologized to Defendant for a prior misunderstanding and Defendant forgave her.
>
> Thereafter, one of the men who arrived with Defendant inquired about cigarettes, and the three men left to visit a nearby gas station.

J.S. testified that after Defendant and the other men left, J.M. was lying on a couch in the living room, across from the front door and "facing [him] and like propped up [with her left hand]," while he sat on the other end of the couch, near the fireplace and away from the door.  Suddenly, the front door burst open and Defendant entered the room. He commanded "shut up, bitch," and as he walked into the room, he shot J.M. two times and J.S. once in the face.  J.S. testified that he saw Defendant shoot J.M. in the head and arm as she lay on the couch, and that she didn't move after she was shot.

Defendant then walked over to J.S., who reached up and grabbed the gun, a nine millimeter handgun.  The two men began to wrestle for control of the gun. Defendant shot J.S. in the shoulder.  J.S. then grabbed Defendant, "picked him up and . . . ran him through the house into the kitchen and slammed him on the table." Defendant and J.S. continued to wrestle over the gun while Defendant fired off the remaining rounds, striking J.S. several more times.  Defendant also bit J.S. on the arm.[2]

During the melee, J.S. asked Defendant why he was attacking him, and Defendant responded, "[y]eah you gonna get one," and indicated Defendant's roommate "told him to do it."  J.S. testified that he struggled to gain control of the gun as Defendant kept pulling the trigger, and soon he heard the gun begin to click. Realizing there were no bullets left, J.S. jumped up, pushed Defendant off of him, and ran outside to a neighbor's house.  While J.S. was knocking on the neighbor's door, the other two men, who had previously left for the gas station, arrived on the porch and asked J.S. what happened.  J.S. told them Defendant shot him and asked them to call the police.  Soon thereafter, police arrived and J.S., in critical condition, was transported to a hospital.

The State called J.M.'s neighbor, who testified that she was aware of J.M.'s drug use, and that J.M.'s house was frequented by drug users.  The neighbor also testified that in the early morning hours, she heard knocking on her door, and discovered J.S. on her front porch, pleading for help, along with another man whom she could not identify.  Frightened for her own safety, she shouted at them through the door to call the police if they needed help, and one of the men responded that J.M. was "messed up pretty bad over there."  She then called the police.  After police officers arrived, she went outside and told the responding officers that one of the men on her porch had informed her that J.M. was injured.  The officers then responded to J.M.'s house and discovered her lying "lifeless" on the couch.

Detective Enoch Chambers, of the St. Louis Metropolitan Police Department's homicide division, was dispatched to the scene that morning.  He testified that when he arrived at J.M.'s house, he observed her body on the couch, and that she was deceased.  J.S. was no longer at the scene, but had been transported

_____

[2]The State corroborated J.S.'s testimony with photographic evidence documenting the injuries he sustained as a result of this incident.

to a hospital. Detective Chambers recorded a video of the scene, which the State submitted into evidence. At trial, the detective described the scene as the video was played to the jury. The video showed blood splatter on the walls, ceiling, floors, and front door handle of the victim's house. It also showed furniture and various items upended and strewn about the floor in the living room, kitchen, and dining room. Detective Chambers testified that it appeared from the disarray that there had been a struggle in the house. He further stated that he recovered three nine millimeter shell casings from the scene, including one casing that fell out of a jacket with bullet holes in it, later determined to belong to J.S. Detective Chambers testified that no other shell casings were found in the house.

The detective further testified that he was able to interview J.S. a month later, while J.S. was still convalescing in the hospital. At that point Defendant had already been identified as a suspect, and during the interview, when presented with a photo lineup, J.S. identified Defendant as the shooter.

The State also called Dr. Jane Turner, the assistant medical examiner for the City of St. Louis. Dr. Turner performed an examination of J.M.'s body at the scene of the crime as well as an autopsy. Based on her examination, she concluded that J.M. suffered a gunshot injury to the head, physically incapacitating her and causing her death.

(Resp. Ex. 5, ECF No. 14-5 at 4-7).

The jury found Petitioner guilty of murder in the first degree of J.M., two counts of armed criminal action, and the class A felony of assault in the first degree of J.S. The trial court entered a judgment in accordance with the jury's verdict and sentenced Petitioner to concurrent terms of life in prison without probation or parole.

## Legal Standard

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), federal courts review state court decisions under a deferential standard. Owens v. Dormire, 198 F.3d 679, 681 (8th Cir. 1999). Federal habeas relief is available to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); Williams-Bey v. Trickey, 894 F.2d 314, 317 (8th Cir. 1990) (citing § 2254(a)).

To obtain federal habeas review of a claim raised in a § 2254 petition, the petitioner must have first raised the federal constitutional dimensions of the claim in State court in accordance

with State procedural rules.  Duncan v. Henry, 513 U.S. 364 (1995) (per curiam); Beaulieu v. Minnesota, 583 F.3d 570, 573 (8th Cir. 2009) (quoted case omitted).  In Missouri, "a claim must be presented 'at each step of the judicial process' in order to avoid procedural default."  Jolly v. Gammon, 28 F.3d 51, 53 (8th Cir. 1994) (quoting Benson v. State, 611 S.W.2d 538, 541 (Mo. Ct. App. 1980)).  If the petitioner failed to properly present the claim in State court, and no adequate non-futile remedy is currently available by which he may bring the claim in that forum, the claim is deemed procedurally defaulted and cannot be reviewed by the federal habeas court "unless the [petitioner] can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  Coleman v. Thompson, 501 U.S. 722, 750 (1991); see also Martinez v. Ryan, 566 U.S. 1, 10-11 (2012).

Where the State court adjudicated a claim on the merits, federal habeas relief can be granted on the claim only if the State court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2).  See Williams v. Taylor, 529 U.S. 362, 379 (2000).  The federal law must be clearly established at the time the petitioner's State conviction became final, and the source of doctrine for such law is limited to the United States Supreme Court.  Id. at 380-83.

A State court's decision is "contrary to" clearly established Supreme Court precedent when it is opposite to the Supreme Court's conclusion on a question of law or different than the Supreme Court's conclusion on a set of materially indistinguishable facts.  Williams, 529 U.S. at 412-13; Carter v. Kemna, 255 F.3d 589, 591 (8th Cir. 2001).  A State court's decision is an "unreasonable

application" of Supreme Court precedent if it "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.  Merely erroneous or incorrect application of clearly established federal law does not suffice to support a grant of habeas relief.  Instead, the State court's application of the law must be objectively unreasonable. Id. at 409-11; Jackson v. Norris, 651 F.3d 923, 925 (8th Cir. 2011).

Finally, when reviewing whether a State court decision involves an "unreasonable determination of the facts" in light of the evidence presented in the State court proceedings, State court findings of basic, primary, or historical facts are presumed correct unless the petitioner rebuts the presumption with clear and convincing evidence.  28 U.S.C. § 2254(e)(1); Rice v. Collins, 546 U.S. 333, 338-39 (2006); Collier v. Norris, 485 F.3d 415, 423 (8th Cir. 2007).  Erroneous findings of fact do not automatically require the grant of habeas relief, however.  Instead, the determination of these facts must be unreasonable in light of the evidence of record. Collier, 485 F.3d at 423; Weaver v. Bowersox, 241 F.3d 1024, 1030 (8th Cir. 2001).

Federal courts are "bound by the AEDPA to exercise only limited and deferential review of underlying State court decisions." Lomholt v. Iowa, 327 F.3d 748, 751 (8th Cir. 2003).  "To obtain habeas relief from a federal court, a state prisoner must show that the challenged state-court ruling rested on 'an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" Metrish v. Lancaster, 569 U.S. 351, 358 (2013) (quoting Harrington v. Richter, 562 U.S. 86, 103 (2011)).  This standard is "difficult to meet." Id.

**Procedurally Defaulted Claim**

In Ground Two of the Petition, Petitioner claims the trial court plainly erred in giving Instruction No. 5, the verdict director on the first-degree murder charge in Count I, because it

improperly referenced Instruction No. 11, Petitioner's self-defense instruction relating to the assault charge in Count III of a different victim, J.S., and misled the jury into thinking they were required to find that Defendant shot both J.S. and J.M. in self-defense.

Petitioner sought plain error review of this claim on direct appeal, conceding that the point was not preserved for appeal.  (Resp. Ex. 5, ECF No. 14-5 at 9-10).  A claim must be presented at each step of the judicial process in state court in order to avoid procedural default.  Jolly, 28 F.3d at 53 (citing Benson v. State, 611 S.W.2d 538, 541 (Mo. Ct. App.1980)).

The Missouri Court of Appeals reviewed the merits of Petitioner's instructional error claim for plain error.  The court discussed the legal standards applicable to instructional error, Defendant's trial testimony, the language of the two instructions at issue, and trial counsel's clarifying closing argument.  (ECF No. 14-5 at 10-12.)  The court found the reference in the verdict director to the separate self-defense instruction was not confusing, was proper and relevant to the jury's deliberation regarding the first-degree murder charge and consistent with the evidence presented at trial, and thus was not plain error.  (Id. at 12.)  The court also noted that defendant did not object to the verdict director and had submitted the self-defense instruction, and therefore could not complain that submission of the instruction was reversible error.  (Id. at 12-13.)

A federal habeas court "cannot reach an otherwise unpreserved and procedurally defaulted claim merely because a reviewing state court analyzed that claim for plain error." Clark v. Bertsch, 780 F.3d 873, 874 (8th Cir. 2015).  Instead, this Court may review the merits of the claim only if cause is shown for the default and actual prejudice resulted from the alleged constitutional violation, or if Petitioner shows that a fundamental miscarriage of justice would occur if the Court were not to address the claim.  Coleman, 501 U.S. at 750.

Here, Petitioner makes no attempt to assert cause and actual prejudice.  As a result, Petitioner fails to demonstrate cause for his procedural default.  If a prisoner fails to demonstrate cause, the court need not address prejudice.  Cagle v. Norris, 474 F.3d 1090, 1099 (8th Cir. 2007).  Nor has Petitioner shown that a fundamental miscarriage of justice would occur if the Court does not review the merits of the claim.  Petitioner has presented no new evidence of actual innocence, nor has he shown that a constitutional violation has probably resulted in the conviction of one who is actually innocent.  Abdi v. Hatch, 450 F.3d 334, 338 (8th Cir. 2006).

Consequently, the claim raised in Ground Two is procedurally barred from habeas review and will be dismissed.

## Time-Barred, Procedurally Barred, and Noncognizable Claims

In the Amended Petition, as liberally construed, Petitioner asserts the following additional grounds for relief:

> (1) Trial counsel was ineffective for not investigating the allegation that the state's key witness against Petitioner, J.S., was not sentenced in a federal court proceeding until after he testified at Petitioner's trial and received a deal in return for his testimony against Petitioner;
>
> (2) Direct appeal counsel was ineffective for failing to investigate why the state's key witness received a low sentence in federal court, as Petitioner instructed her to do; for failing to include an argument on Petitioner's direct appeal that the state's key witness received a deal in a federal court proceeding in return for his testimony against Petitioner; and for failing to obtain J.S.'s sealed federal court records;
>
> (3) Post-conviction counsel was ineffective for failing to "pursue [J.S.'s] lenient federal sentence" and obtain J.S.'s sealed federal court records as Petitioner asked her to.

(ECF No. 43 at 5, 15-16).

Respondent argues these claims fail because they are untimely, procedurally barred, and without merit.

The new claims set forth in Petitioner's Amended Petition are untimely.  The Missouri Court of Appeals issued its mandate ending post-conviction review on July 6, 2018 (Resp. Ex. 14-

20 at 1), which started the statute of limitations running one day later.  See Payne v. Kemna, 441 F.3d 570, 572 (8th Cir. 2006) (under Missouri state court procedures, post-conviction relief proceedings are not final until the appellate court's mandate is issued); King v. Hobbs, 666 F.3d 1132, 1136 (8th Cir. 2012) (the AEDPA's statute of limitations starts to run the day after the event that triggers the time period, citing Fed. R. Civ. P. 6(a)(1)(A); Moore v. United States, 173 F.3d 1131, 1133-35 (8th Cir. 1999)).

Petitioner filed his original Petition on October 29, 2018, within the one-year statute of limitations.  But the Amended Petition was filed on August 5, 2020, more than a year out of time. "Claims made in an untimely filed motion under [§ 2254] may be deemed timely if they relate back to a timely filed motion as allowed by Federal Rule of Civil Procedure 15(c)."  Dodd v. United States, 614 F.3d 512, 515 (8th Cir. 2010) (discussing 28 U.S.C. § 2255).  "An amendment to a pleading relates back to the original pleading when 'the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading.' Fed. R. Civ. P. 15(c)(1)(B)."  Taylor v. United States, 792 F.3d 865, 869 (8th Cir. 2015) (applying Rule 15(c) to a 28 U.S.C. § 2255 petition).  "To arise out of the same conduct, transaction, or occurrence, the claims must be 'tied to a common core of operative facts.'"  Dodd, 614 F.3d at 515 (quoting Mayle v. Felix, 545 U.S. 644, 664 (2005)).  "New claims must arise out of the same set of facts as the original claims, and the facts alleged must be specific enough to put the opposing party on notice of the factual basis for the claim.'"  Taylor, 792 F.3d at 869 (internal quotation marks and quoted cases omitted).  "Thus, it is not enough that both an original motion and an amended motion allege ineffective assistance of counsel during a trial."  Dodd, 614 F.3d at 515.

Here, the Amended Petition's new claims do not relate back to any of the three claims in the original Petition under Rule 15(c), because the new claims do not share a common core of operative facts with the original claims, and do not arise out of the conduct, transaction, or occurrences set out in the original Petition.  As a result, the Amended Petition's new claims are barred by the one-year statute of limitations and must be dismissed as untimely.  See 28 U.S.C. § 2244(d).

In addition to being time barred, the new claims are procedurally barred.  Petitioner did not preserve the claims in his post-conviction Rule 29.15 motion, creating a procedural bar pursuant to Missouri Supreme Court Rule 29.15(a).  A claim must be presented at each step of the judicial process in state court in order to avoid procedural default.  Jolly, 28 F.3d at 53.  Petitioner makes no attempt to assert cause and actual prejudice and, as a result, fails to demonstrate cause for his procedural default.[2]  Petitioner does not claim and has not presented new evidence of actual innocence, nor has he shown that a constitutional violation has probably resulted in the conviction of one who is actually innocent.  Abdi, 450 F.3d at 338.

Moreover, the claims are without merit.  Petitioner's claims are based entirely on speculation that J.S., who Petitioner shot five times, lied in Petitioner's trial in the hope of receiving a more favorable disposition on an unrelated charge in federal court in another state.

Petitioner cannot establish that his trial attorney was ineffective for failing to discover and introduce evidence of J.S.'s allegedly lenient federal criminal sentencing that Petitioner claims took place after the verdict in his case.

---

[2]As discussed infra, Petitioner's claim that his post-conviction counsel was ineffective is independent, and does not assert that she failed to include an ineffective assistance of trial counsel claim in Petitioner's post-conviction Rule 29.15 motion.  See Martinez v. Ryan, 566 U.S. 1, 9, 14 (2012) (post-conviction counsel's ineffectiveness can provide "cause" for excusing a defaulted ineffective assistance of trial counsel claim).

Petitioner cannot establish that his direct appeal counsel was ineffective for failing to pursue an investigation that was not the proper subject of a direct appeal. Direct appeals concern alleged errors by the trial court and are evaluated on the record from the trial court. See Mo. S. Ct. Rule 81.12 (record on appeal). Direct appeal counsel was not ineffective for declining to pursue an argument that had no chance of success and would detract from the arguments counsel chose to pursue. See Jones v. Barnes, 463 U.S. 745, 751-54 (1983) (appeal counsel has no constitutional duty to raise every nonfrivolous issue requested by a defendant). "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." Id. at 751-52.[3]

Finally, Petitioner claims his post-conviction counsel was ineffective for failing to "pursue the witness's lenient sealed sentence" and obtain J.S.'s sealed federal criminal case records. (ECF No. 43 at 15.) In addition to being time barred and procedurally barred, this claim fails because ineffectiveness of post-conviction counsel is not an independent ground for relief under § 2254. See 28 U.S.C. § 2254(i). Further, there is no Sixth Amendment right to post-conviction counsel.

---

[3]Moreover, Petitioner would be unable to establish that any of his appointed counsel could have obtained sealed records from J.S.'s federal criminal case in the U.S. District Court for the Southern District of Illinois. Petitioner himself attempted unsuccessfully to obtain J.S.'s sealed criminal case records. See United States v. Strayhorn, No.11-CR-30210-MJR (S.D. Ill. Jan. 7, 2019) ("While Mr. Stafford makes a valiant pitch, the Court does not grant nonparties access to sealed documents in closed criminal cases."). Petitioner's fourth motion for appointment of counsel in the present case stated his reason for needing appointed counsel was his inability to access sealed documents in closed criminal cases to which he was not a party. (ECF No. 15). This Court denied the motion without prejudice, stating that "[c]ounsel . . . would also not be able to access such documents. Consequently, this reason does not present a justification for the appointment of counsel." (ECF No. 16 at 1-2). Petitioner filed a fifth motion for appointment of counsel or an investigator, also premised on his inability to access sealed documents in J.S.'s criminal case, and a motion to unseal government documents. (ECF Nos. 17, 18). The Court denied these motions stating, "The Court has previously clarified for Petitioner that any appointed counsel would also not be able to access such documents. . . . Likewise, the Court has no authority to unseal documents in other courts." (ECF No. 22 at 2). Further, only the original Petition was pending at the time, and the Court stated that Petitioner's allegations in his motions were unrelated to the claims in his case. (Id. at 2-3).

Coleman, 501 U.S. at 752; see Christenson v. Ault, 598 F.3d 990, 995-96 (8th Cir. 2010) ("There is no federal constitutional right to the effective assistance of post-conviction counsel.") (quoted case omitted).  Thus, Petitioner's independent claim of ineffective assistance of post-conviction counsel is not cognizable.

### Claims Addressed on the Merits

The record shows Petitioner properly raised the following claims in State court and that the Missouri Court of Appeals denied relief on review of the merits.  The Court turns to the merits of the claims, exercising limited and deferential review of the underlying State court decisions as required by the AEDPA.

A.  Ground One – Trial Court Error – Failure to Acquit on First-Degree Murder Charge

In Ground One, Petitioner asserts the trial court erred in failing to acquit him on the first-degree murder charge because there was no evidence Petitioner deliberately and knowingly shot and killed the victim, J.M.  Respondent argues that the decision of the Missouri Court of Appeals denying this claim on the merits is reasonable and entitled to deference.

The Missouri Court of Appeals discussed the law and applied it to the facts relevant to this claim on direct appeal as follows:

> In his first point, Defendant challenges the sufficiency of the evidence with respect to his conviction for first-degree murder.  Specifically, he argues the State failed to prove he deliberately and knowingly shot the victim, J.M., because the State's ballistics evidence and the location of the shell casings found at the crime scene are inconsistent with the testimony offered by the State's eyewitness to the shootings, J.S.  We disagree.

> Defendant contends the ballistics tests prove "[i]t was a physically impossible," for Defendant to have shot J.M. from the front doorway, based on the bullet's trajectory as indicated by the victim's entrance and exit wounds.  Defendant argues that "no casings were found anywhere near" the location from which J.S. testified Defendant fired his gun.  The State responds that regardless of Defendant's location in the room at the time he fired the shots, or the location of the shell casings, sufficient evidence was adduced at trial from which a reasonable trier of fact could have found Defendant guilty of first-degree murder.  Furthermore, the

State contends that the facts relied on by Defendant do not prove physical impossibility with respect to whether Defendant could have shot J.M. in the head. We agree with the State.

"A person commits the crime of murder in the first degree, if he knowingly causes the death of another person after deliberation upon the matter." Section 565.020.1.  Deliberation means "cool reflection for any length of time no matter how brief." Section 565.002(3).  Deliberation need only be momentary and "[i]t is enough if the evidence shows that the defendant considered taking another's life in a deliberate state of mind." State v. Atwood, 294 S.W.3d 144, 145 (Mo. App. S.D. 2009). Moreover, eyewitness testimony, if believed, is sufficient evidence to support a murder conviction.  State v. Williams, 277 S.W.3d 848, 853 (Mo. App. E.D. 2009).

(Resp. Ex. 5, ECF No. 14-5 at 3-4).

The Court of Appeals summarized the facts of the case, as quoted above in the Factual

Background section, *supra* at 4-6.  The court then analyzed Petitioner's claim in light of the facts:

Defendant challenges the sufficiency of the evidence to support his conviction of Murder in the first-degree. We note that the testimony of a single witness may be sufficient to prove guilt, and it is the jury's role, not this Court's, to decide whether to believe that witness.  State v. Porter, 640 S.W.2d 125, 128 (Mo. 1982); State v. Barnes, 693 S.W.2d 331, 332 (Mo. App. S.D. 1985); State v. Booth, 423 S.W.2d 820, 825 (Mo. 1968).  The jury may "believe all, part or none of the testimony of any witness." Porter, 640 S.W.2d at 128.

Here, viewing the evidence in the light most favorable to the verdict, J.S.'s testimony was sufficient for the jury to find that Defendant deliberated before killing J.M. and that he knowingly killed J.M. by shooting her in the head. Although the State presented additional evidence to corroborate J.S.'s testimony, his testimony alone, if believed by the jury, was sufficient to prove that Defendant knowingly, after deliberation upon the matter, caused the death of J.M.  It was for the jury to decide how much credence to give J.S.'s testimony, and this Court will not reweigh the evidence or reassess J.S.'s credibility.  See Booth, 423 S.W.2d at 825.

Defendant, however, cites "the physical facts rule" in support of his argument that J.S.'s testimony is not probative, and should be disregarded, because it presented a "physical impossibility."  More particularly, he contends that this Court "cannot accept the fact that [J.M.] died from a shot fired from the front door of her house because it is a physical impossibility."  Defendant points to evidence of the trajectory of the bullet and argues that it would have been "physically impossible" for the bullet to have entered the back of J.M.'s head if he had shot her from the doorway, because, according to J.S.'s testimony, J.M. was lying on the

couch facing the doorway when Defendant entered and began shooting.  The State responds that "the physical facts rule" is inapplicable because it was not impossible for Defendant to have shot the victim in the back of the head under the circumstances.

Under "the physical facts rule," the testimony of a witness is of no probative value and may be disregarded if it "is opposed to the unquestioned laws of nature that lie within the court's judicial knowledge or which is clearly in conflict with scientific principles as established by the laws of physics or mechanics. . ."  State v. Puckett, 691 S.W.2d 491, 493 (Mo. App. E.D. 1985) (citing State v. Duncan, 540 S.W.2d 130, 134 (Mo. App. St.L. 1976)).  The rule, however, does not apply to eyewitness testimony, if the facts proving impossibility are either (1) controvertible or (2) the testimony challenged does not directly contradict an incontrovertible fact.  See Duncan, 540 S.W.2d at 134 (holding "the physical facts rule" could not be invoked to disregard eyewitness testimony, because the incontrovertible facts did not directly contradict such testimony); Anderson v. Orscheln Bros. Truck Lines, Inc., 393 S.W.2d 452, 460 (Mo. 1965); State v. Davis, 504 S.W.2d 221, 223 (Mo. App. K.C. 1973), abrogated on other grounds by State v. Lawson, 876 S.W.2d 770 (Mo. App. S.D. 1994).

Here, as the State argues, Defendant's reliance on the "physical facts rule" is misplaced, because it is premised upon a disputed and controvertible fact.  Defendant erroneously asserts that it is undisputed that Defendant fired from the doorway, the shot that killed J.M.  This assertion is not consistent with J.S.'s testimony at trial.  When asked whether Defendant was standing still when firing the shots, J.S. testified that Defendant fired the gun while "walking in" to the room.  Therefore, instead of firing from the doorway, Defendant could have fired the fatal shot after he entered the room.  Indeed, this scenario would also explain why no shell casings were found near the doorway.[3]  Consequently, the premise of Defendant's argument is flawed, because Defendant relies on a disputed fact, which is for the jury to decide, State v. Shinn, 921 S.W.2d 70, 73 (Mo. App. E.D. 1996), rather than an incontrovertible fact of nature or mechanics.  Thus, "the physical facts rule" does not apply.  See Duncan, 540 S.W.2d at 134 (holding application of "the physical facts rule" requires, first, a determination as to whether the fact being offered to disprove the testimony of a witness is "an incontrovertible fact.")

Moreover, even if we were to assume that Defendant fired the shots from the doorway, he has still failed to prove physical impossibility.  His argument assumes that J.M. could not have turned her head from Defendant after he burst into the room firing his pistol.  Defendant's assumption cannot be characterized as a fact established under the "unquestioned laws of nature" or science.  Considering the evidence and all reasonable inferences in the light most favorable to the State,

---

[3]Moreover, J.S. testified that he fled the house while Defendant remained inside.  Therefore, the jury could have reasonably concluded that Defendant retrieved shell casings from the doorway before fleeing.

see Duncan, 540 S.W.2d at 134-135, we do not find it to be physically impossible—
or inconsistent with J.S.'s testimony—for Defendant to have shot J.M. in the back
of her head. Accordingly, there was sufficient evidence to support Defendant's
conviction by the jury of murder in the first degree and the trial court did not err in
entering judgment against him. Point denied.

(Resp. Ex. 5, ECF No. 14-5 at 7-9).

A state appellate court's conclusion that the evidence was sufficient to support a criminal

conviction is entitled to great deference by a federal court. Jackson v. Virginia, 443 U.S. 307, 323

(1979). Under Jackson, a habeas petitioner is entitled to relief if a federal habeas court

"conclude[s] that upon the record evidence adduced at the trial no rational trier of fact could have

found proof of guilt beyond a reasonable doubt." Nash v. Russell, 807 F.3d 892, 897 (8th Cir.

2015). In applying this standard, the federal habeas court does not re-weigh the evidence and must

resolve any inconsistencies in favor of the prosecution. Id. Under the AEDPA, the Court may

grant relief only if it finds the Missouri Court of Appeals' "conclusion that the evidence satisfied

the Jackson sufficiency of the evidence standard both incorrect and unreasonable." Id. "[W]hether

the record contains sufficient evidence to establish each element of the crime beyond a reasonable

doubt 'is everyday business for the state courts, grist for their mill, and it will be a rare case in

which a federal court on habeas will disagree with them.'" Cassell v. Lockhart, 886 F.2d 178, 179

(8th Cir. 1989) (quoted case omitted).

Upon review of the record, the Court concludes the Missouri Court of Appeals'

determination that the evidence was sufficient for the trial court to submit the first-degree murder

charge to the jury, and to accept the jury's guilty verdict on that charge, is entitled to deference.

The Court cannot say on the record evidence adduced at the trial that no rational trier of fact could

have found proof of guilt beyond a reasonable doubt on the first-degree murder charge. See Nash,

807 F.3d at 897. The Missouri Court of Appeals' decision was not contrary to, or an unreasonable

application of, clearly established Federal law, nor was it a decision based on an unreasonable

determination of the facts in light of the evidence presented.   28 U.S.C. §§ 2254(d)(1), (2);

Williams, 529 U.S. at 379.

Consequently, the Court will deny this ground for habeas relief.

B.   Ground Three – Ineffective Assistance of Trial Counsel

In Ground Three, Petitioner reasserts his post-conviction appeal claim that trial counsel

was ineffective for failing to use a peremptory challenge to strike Juror 697.   During voir dire,

Juror 697 stated that police had treated her mother "really cool" during a previous criminal case,

and that this was her only previous experience that would have affected her ability to keep an open

mind in the case.

Petitioner filed a pro se Motion to Vacate, Set Aside or Correct the Judgment or Sentence

under Missouri Supreme Court Rule 29.15 on January 5, 2015.  (Resp. Ex. 14-16 at 8-12).  Post-

conviction counsel entered an appearance and filed an Amended Motion to Vacate, Set Aside or

Correct the Judgment and Sentence and Request for Evidentiary Hearing.  (Id. at 23-53).  The post-

conviction motion court conducted an evidentiary hearing on Petitioner's Rule 29.15 motion on

July 24, 2015, at which Petitioner and his trial counsel testified.   The motion court issued findings

of fact and conclusions of law denying Petitioner's Rule 29.15 motion on October 22, 2015.   The

motion court concluded that Juror 697's statement did not indicate a disqualifying bias against

Movant and in favor of police, and that trial counsel was not ineffective, as he articulated valid

strategic reasons for not exercising a peremptory strike against Juror 697.  (Resp. Ex. 16, ECF No.

14-16 at 57, 59-60.)

Petitioner filed an appeal of the denial of post-conviction relief.   The Missouri Court of

Appeals affirmed the denial of post-conviction relief, holding that counsel was not ineffective for

failing to peremptorily strike or move to strike for cause Juror 697.   Respondent argues the

Missouri Court of Appeals' decision denying this claim on the merits is reasonable and entitled to deference.

The Missouri Court of Appeals discussed the ineffective assistance of counsel claim as follows:

> During voir dire, the prosecutor asked Juror [697] whether any of her past experiences or relationships would affect her ability to keep an open mind regarding the facts of the case.  Juror [697] stated "no," and said the only thing that would have had any effect on her was that the police were "really cool" when her mother was found not guilty of murder in 1977 by reason of insanity.  During trial, police credibility or role of the police was never at issue; rather, the case primarily hinged on forensic evidence and on the testimony and credibility of [J.S.], who identified Movant as the perpetrator who shot him and killed [J.M.].
> . . . .
>
> Ineffective Assistance of Counsel Standard
>
> To succeed on an ineffective assistance of counsel claim, a post-conviction movant must demonstrate (1) that trial counsel failed to perform with the level of skill and diligence that a reasonably competent attorney would have exercised in a similar situation, and (2) that the movant was prejudiced by counsel's failure.  McGuire v. State, 523 S.W.3d 556, 563 (Mo. App. E.D. 2017).  To prove the first prong, a movant "must overcome the strong presumption that counsel's conduct was reasonable and effective" by pointing to "specific acts or omissions of counsel that, in light of all the circumstances, fell outside the wide range of professional competent assistance."  Id. (citing Zink v. State, 278 S.W.3d 170, 176 (Mo. banc 2009)).  Generally, strategic trial choices will not support a claim of ineffective assistance, as strategic decisions made after a thorough investigation of the relevant facts and law are "virtually unchallengeable."  Id.  To show prejudice as required by the second prong, the movant "must demonstrate that, absent the claimed errors, there is a reasonable probability that the outcome would be different."  Strong v. State, 263 S.W.3d 636, 642 (Mo. banc 2008).  If a movant fails to establish either prong, we need not analyze the other.  Moore v. State, 407 S.W.3d 172, 175 (Mo. App. E.D. 2013).
>
> Point I
>
> In his first point, Movant argues that the motion court clearly erred in denying his Rule 29.15 motion because his trial counsel was ineffective by unreasonably failing to peremptorily strike or to move to strike for cause Juror [697].  Movant asserts that Juror [697]'s statement that the police were "really cool" to her mom in a previous criminal trial indicated disqualifying bias by Juror [697]

or that at least trial counsel's failure to use a peremptory strike was not what a reasonably competent attorney would do under same or similar circumstances.

*Analysis*

When a movant alleges ineffective assistance of counsel for failure to strike an unqualified juror, we must analyze whether the juror was qualified.  McGuire, 523 S.W.3d at 564. "To qualify as a juror, the venireperson must be able to serve on the jury with an open mind, free from bias or prejudice." Id.  If the venireperson suggests she cannot be fair and impartial and is not rehabilitated in voir dire, counsel's failure to strike the potential juror overcomes the presumption of effectiveness normally afforded to defense counsel. Id.; Moore, 407 S.W.3d at 175-76.  However, if a venireperson unambiguously states she can evaluate the evidence fairly and impartially, trial counsel is not ineffective for failing to seek removal. Thompson v. State, 437 S.W.3d 253, 261 (Mo. App. W.D. 2014).

In this case, the prosecutor asked Juror [697] if any of her past experiences or relationships would affect her ability to keep an open mind in the case.  Juror [697] answered "no," but also stated that the police were "really cool" when her mom was found innocent of murder in 1977 by reason of insanity and "that would be the only one that *would have* affected me." (emphasis added).  It is clear that Juror [697]'s response to the prosecutor's question was that her past experiences and relationships would not affect her ability to keep an open mind in the case.  Juror [697] stated that her experience during her mother's criminal case was the only one that *would have* affected her; this does not equate to Juror [697] saying that the experience *did* affect her ability to keep an open mind. "[M]ere equivocation is not enough to disqualify a juror." Cummings v. State, 445 S.W.3d 648, 652 (Mo. App. E.D. 2014).  Further, because Juror [697] unambiguously responded "no" to the prosecutor's inquiry about whether her past experiences and relationships would affect her ability to keep an open mind, we find that Juror [697]'s statements did not suggest that she could not be fair and unbiased.  We therefore agree with the motion court's finding that Juror [697]'s statement did not indicate a disqualifying bias against Movant.  Additionally, Movant's argument that his trial counsel was ineffective for failing to use a peremptory strike on Juror [697] is also meritless.  While Juror [697]'s statements may have suggested that she had a favorable view of police, "[w]e will not find counsel ineffective for failing to use a peremptory strike to remove a juror who was otherwise qualified, and Movant is not prejudiced by the presence of a particular qualified juror over another." Id. at 653.  We find that Movant's trial counsel was not ineffective for failing to strike Juror [697].

Moreover, Movant has not shown that he was prejudiced even if his trial counsel was ineffective for failing to strike Juror [697].  At most, Juror [697]'s statements suggest she had a favorable view of police.  From the record before us, it is clear that police credibility or actions by police were never at issue in this case; this is supported by trial counsel's testimony at the evidentiary hearing, stating this

20

"was not necessarily a cop credibility case," and that the defense "generally [was] not going to be arguing that the cops, you know, lied or, you know, did something wrong." Rather, this case largely hinged on witness testimony and forensic evidence. Further, Movant's trial counsel also testified at the evidentiary hearing that he thought there were six other venirepersons who were more unfavorable to Movant's case than Juror [697], and thus did not use one his six peremptory strikes on her. Movant has thus failed to demonstrate that there is a reasonable probability that the outcome of Movant's trial would have been different if Juror [697] had been removed. See Moore, 407 S.W.3d at 176 (finding no prejudice where the record did not support that the outcome of trial would have been different without the juror at issue on the jury).

Point I is denied.

(ECF No. 14-19 at 4-7) (emphases in original).

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984). The Supreme Court set forth the standard governing ineffective assistance of counsel claims in Strickland. To establish ineffective assistance, a petitioner must show (1) his counsel's performance was deficient, or that it "fell below an objective standard of reasonableness," and also that (2) "the deficient performance prejudiced the defense." Id. at 687-88. Strickland provides a "highly deferential" standard to review ineffective assistance of counsel claims by having courts "apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington, 562 U.S. at 104 (quoting Strickland, 466 U.S. at 689).

On federal habeas review, this Court does not determine whether Petitioner's trial counsel provided effective assistance, but instead examines "whether the state court's application of the Strickland standard was unreasonable." See Harrington, 562 U.S. at 101; see also Strickland, 466 U.S. at 689 ("Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to

conclude that a particular act or omission of counsel was unreasonable."). The standard on federal habeas review "is different from asking whether defense counsel's performance fell below Strickland's standard." Harrington, 562 U.S. at 101. Instead, the Court must determine "whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Id. at 105. "Counsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" Gray v. Norman, 739 F.3d 1113, 1117 (8th Cir. 2014) (quoting Strickland, 466 U.S. at 690). "Where a state court concludes that there was no ineffective assistance under this 'highly deferential' standard, a federal court then must review counsel's performance under the 'deferential lens of § 2254(d).'" Id. (quoting Cullen v. Pinholster, 563 U.S. 170, 190 (2011)).

On post-conviction appeal, the Missouri Court of Appeals applied the equivalent of the Strickland standard and found that trial counsel was not ineffective for failing to use a peremptory challenge to strike Juror 697, or to seek to strike her for cause, because the juror was qualified to serve. The court found the juror's responses did not indicate she could not keep an open mind and did not reflect disqualifying bias, the case did not turn on police credibility or actions, and trial counsel testified there were six other venire persons he viewed as less favorable to the defense than Juror 697.

The Court determines that the Missouri Court of Appeals' application of the Strickland standard to this claim of ineffective assistance of trial counsel was not unreasonable for the reasons stated by that court. See Owens, 198 F.3d at 681; Harrington, 562 U.S. at 101. Consequently, the Court will deny this ground for habeas relief.

### Conclusion

For the foregoing reasons, the Court concludes that the grounds in Petitioner Steven Stafford's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody

are either procedurally barred or fail on the merits, and the claims in his Amended Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody are time barred and procedurally barred and must be denied in all respects.

Accordingly,

**IT IS HEREBY ORDERED** that David Vandergriff's name will be substituted as the named Respondent in this action pursuant to Rule 25(d), Fed. R. Civ. P.

**IT IS FURTHER ORDERED** that Petitioner Steven Stafford's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (ECF No. 1) and Amended Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (ECF No. 43), are **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner Stafford has not made a substantial showing of a denial of a constitutional right or that it is debatable whether the Court's procedural rulings are correct, and this Court will not issue a Certificate of Appealability.

A separate Judgment in accordance with this Memorandum and Order will be filed herewith.

*Ronnie L. White*
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**

Dated this <u>3rd</u> day of February, 2022.

23